Josephine Petrick for Appellant Fred Sahadi. I want to turn first to the issue of grant fees because the economic reality is that so many of these insurance recovery cases are going to be a contingency fee cases. Most insurers trying to chase down their insurers simply don't have the resources to pay for an attorney on an hourly basis particularly when they were in an and they're hurting for the insurance proceeds that they contracted for with their insurers. And like this case many will be at an early stage when the insured may suspect though perhaps could not yet prove that the insurer will not be dealing with them fairly and promptly. I think you may start trick if I can ask I acknowledge that you have a very compelling policy argument here in terms of what would happen if this is upheld and if this is going to adversely affect the decision below. Is this going to adversely affect a number of people who can make contingency fee arrangements with their counsel and later have to pursue their bad faith claim. But it seems to me that you know what's difficult about this case is that Brant seems to be very clear in its in its holding that attorney's fees are only recoverable as compensatory damages if the insured can show it was reasonably necessary for him to obtain the attorney because of the insurers bad faith. So how do we resolve this without going in your favor without going against Brant. Yes your honor in Brant I think that the portion of Brant that your honor is referring to the reasonably necessary certainly is met here for multiple reasons. First because Mr. Sahadi or a reasonable jury could find that Mr. Sahadi would have had to retain his counsel eventually in the face of Liberty Mutual's extended delay and and foot dragging and paying the fees. But also I think there's an issue here about a cause in fact. You know I think the reasonable necessary reasonably necessary requirement of Brant certainly could be met here. But you know in terms of the component of proximate cause loss causation you know PPP Industries one of the California lead cases on loss causation in this context instructs that there are two components of proximate cause. One is cause in fact and one is a public policy and as your honor stated the public policy considerations here are compelling. There is enough evidence that Mr. Sahadi presented at summary judgment to establish cause in fact for several reasons. One is because he said he retained the Shea and Shea firm because Liberty Mutual had a reputation for not timely paying claims. And at that point even if he could not yet definitively prove or point to a specific date on which Liberty Mutual had begun you know unreasonably delaying as trial counsel pin the date that would be you know around or a reasonable jury could find that was around May 27th 2016. But this is unlike other contexts like in the previous case we just heard securities cases you'll hear you know there is reliance on a statement or reliance on a misstatement by a company executive. You can pinpoint that precise date and any reliance obviously has to happen after that date. But in this case there's no reliance on a misstatement to the date where the plaintiff the insured correctly anticipates that the insurer will not be dealing with them in a fair and prompt manner. And almost by definition that is a slow burn. And so here we have you know Mr. Sahadi changing his counsel when his first trial counsel Todd Davis was not making any headway with Liberty Mutual. Excuse me can I ask a question right there right on Judge Murkia's question. When he changed counsel did the fee percentage increase? Wasn't it one-third one-third? So you're not relying on the change in counsel to increase his fee obligation is that right have I got that? No your honor no no. Thank you go right ahead. Okay yeah and as I read the record I think a reasonable jury could find that the only fees that Mr. Sahadi is seeking is the $160,000 and change it was that's the 33% of his recovery that's what he paid the Shea and Shea firm. And so a reasonable jury could find that Todd Davis's fees are not included in that sum. Can I ask you about the public policy question so I appreciate the fact that if there's a rule that you really cannot get contingency fees until there is some clear evidence of bad faith why is an alternative this scenario not possible? That is a person signs a contingency arrangement I know there's some technical problems with this but signs a contingency agreement not knowing whether there's going to be an exercise of bad faith by the insurance company but then you can identify a time at which bad faith happens and so that therefore the role of the attorney shifts from one of general defense to one of defense in regard to bad faith and as a result with some rough accounting one could assess a certain amount of the contingency fee to response to an insurance company's bad faith and so therefore you would have still the proximate causation to that particular amount of the fee all the way it would not be the entire contingency fee I know there's some difficulties and lawyers keeping track of their hours etc but still what about that is a is a possible scenario so that the right to impacted by our decision? Yes your honor I think that is a possibility and I do think that on the Kassem court presents an analogous scenario in you know dividing fees between those that are used to chase the benefits of the contract and then those which are used that are incurring connection with a bad faith case the Kassem court there said that that's going to be a question for the jury is dividing up those fees and so I think that could potentially be a response a solution to the public policy dilemma presented here but I still think that that would that would not be a barrier to recovery that would not be a reason to grant summary judgment in this case did I secure a question? No but I have one are you seeking a pursuant to grant were you seeking a recovery of fees and costs? Yes your honor fees and costs. Okay in that case I have a follow-up question because the district court decided you know just had to decide that as you said there's proximate that these attorneys fees were approximate and direct result of the bad thing right and an attorney fee a contingency of agreement makes this really tough for all the reasons you've explained I think very articulately it's one-third yeah it's a sort of an all-or-nothing but that's not true cost cost keeps just continuing to mount along so I'm concerned about whether you think that this is really for both counsel whether the district courts ruling is overly broad even if we were to agree that the attorney turned the one fee sorry one third contingency fee was incurred if you will before there was an allegation of bad faith what about the fact that at some point if you were able to show you know that there was bad faith one year in right and costs continued to amount for the next year wouldn't it become entirely consistent that we would draw a line in the sand and say well those costs out there after bad faith were directly approximately caused by the bad faith yes your honor and I I do think that the district courts opinion was you know I haven't exactly done the math but approximately half of the fees were incurred before this you know bright line date that trial council pointed to you just said fees I'm talking about cost did you mean I want to make sure kind of getting okay did the district court have that showing that costs were incurred over a I mean she's not clairvoyant I don't think we have it in our record but did she have an indication that the cost at what point the costs had accrued you know an itemized list yes your honor and if I may briefly pull up the record feel free to correct me if I don't want to take up all your time but maybe when you come back if you just give me the ER site that would be that would be helpful okay I'll do that um and yeah the short answer is that's absolutely correct and there is an itemized list of costs in the record it reflects that approximately half the costs at least in terms of number were incurred before that May 27 2016 date but at least half of them or you know the remaining half were incurred after that including Fred Sahadi's deposition requests for medical records that Liberty Mutual had requested late in the day that sort of thing those are all costs incurred after that you called that bright line date so I do think the district court overstepped and or that the ruling the ruling was overbroad in that sense because as your honor noted costs were not were not contingent necessarily and so there they were certainly you know incurred on a particular on a date certain Liberty Mutual responded to that argument saying well all of those costs and this is in the district courts opinion as well all of those costs after that date were arbitration that Sahadi himself requested but I don't think that's yeah for one thing I don't think that's the case with all of those costs I think they use the term most of them some of them were medical request you know request for medical records and whatnot but even if it were arbitration that Sahadi himself requested he would not have had to or a reasonable jury could find that he would not have had to request that arbitration had Liberty Mutual paid in a timely manner and indeed the record reflects that the arbitration at least formally did not initiate until January of 2017 I believe go ahead I was just gonna ask you with respect to the bad faith which is I think where you were headed which facts of Liberty Mutual's investigation in your view give give rise to the strongest inference that the insurance company here the investigation was unreasonable and and what was kind of wanted to know what your best authority is for supporting that inference oh certainly well first I want to look at the timing I mean that from the time of the accident certainly and of course that's not where we had necessarily draw the line but just to frame it a little bit the accident he occurred in you know February of 2015 and he didn't and mr. Sahadi did not see a dime of insurance proceeds to for as compensatory damages for his UIM claim until February of 2017 but we would you know his trial counsel the time of the accident if you go from the time of the accident right over like seven months there that was the was not the insurance fault I mean I think we're kind of looking at the nine to ten months after the initial demand I would you agree with me on that yes your honor okay just to frame it a little bit how long he had to wait with in terms of injuries it had already been that long and you know we're not attributing that time to liberate mutual but starting on the date April 12 2016 when mr. Sahadi's trial counsel or you know his counsel at Shea and Shea provided the demand package you know with all of the information that he thought Liberty Mutual would potentially request and I know there were some follow-up requests for information but 4,600 pages of medical records at least three statements by before and after witnesses attesting to mr. Sahadi's change in state but counsel could I stop you your time sticking and we know it's a lot but that's exactly why it takes the insurance company a while to digest it it's 4,600 pages judge McGee is right it took them a long time to get plaintiffs counsel to respond I appreciate you've conceded that point so on April 14 right there's the demand 4,600 pages right April 21 they retained this nurse to look at the to look at everything and at that point I don't want to take up too the insurance company delayed in reviewing and evaluating with the claim once they had it because I think on April 14th they had it mm-hmm yes your honor and I do if possible I'd like to reserve some time for rebuttal but I do want to make sure I answer that question because I do think it's an important one it's an important one what's your answer yeah so there was a three month delay you know there were several periods of delay and the first I would point to the three-month four-day delay between July 20th and October 24th 2016 during wedge time a reasonable jury could find that there was no adjusting activity whatsoever I know Crump testified that you know it was so Schwartz not too short Schwartz made his last notation in the record on July 20th I'm losing sound here can you do it's left July 23rd and you're saying that there's nothing so then there's right the new adjuster was assigned August 2nd yes and yeah did not make any notation whatsoever in the file and there were no there was no correspondence either until October 24th 2016 so that's a three month delay and that's on top of the delay that totaled you know between this may 27th 2016 date and the date of the settlement was nine months and 27 days that's you know an insurer has three options when they get a demand under the California code of the insurance regulations they can pay the claim they can deny the claim or they can ask for more information within 40 days and and they have to support they have to explain why that they need that information the one thing they can't do is take a break they can't just take a break and especially they can't take a break when they know that they're insured is elderly he was in his 80s he was suffering from daily pain some pain medications counsel and I'm gonna interrupt you to make sure I get the answer to my question you're going into unreasonable delay between July 20th and October 4th okay do you have another period of delay I just want to make sure I got it yes and then that period that three month period is surrounded by longer period of delay between May 27 2016 when the demand expired okay and February 8th 2017 so can I ask you about the disclosure I appreciate that 4600 pages was was disclosed but essentially you know that the position of the insurance company was that they needed to explore whether in fact there was a pre-existing condition and that there was a real question as to the cause of his problems the medical problems and relating that to the accident so one of the major disclosures that were that was made to you were the MRIs because the MRIs were then given to radiologists by the insurance company who then confirmed their theory that this was all pre-existing condition my question is when did the MRIs come to you because clearly the insurance company has the right to explore this particular issue as to whether there is a pre-existing condition when did it come to you and it's unclear why the MRIs were not part of the original 4600 pages etc do you know anything about that your honor I do not think that the record reflects when mr. Sahadi's counsel received the MRIs but I believe the correspondence reflects and they shared everything they had sorry there's a bit of an echo but the correspondence reflects that they shared everything they had and then obtained a jury could probably infer that they obtained the MRI from the the original MRIs in response to his request but I do want to emphasize something that also can I can I just I want to make sure that that's sweet that that is that's accurate I mean essentially the MRIs of the spine go right to the heart of what the insurance company was investigating I just don't understand why those MRIs if conducted earlier had not been shared with the insurance company until I thought it was after October this is very short before the initial settlement do you know when the MRIs were shared with them and you know the story about how those MRIs were recovered and then the decision made to share them with the insurance company your honor the the timeline that I believe is reflected in the record yeah so the the record does not reflect the story behind you know obtaining the MRIs I think the correspondence between the parties reflects that Sahadi's trial counsel O'Connor mr. O'Connor shared everything he had in the 4,600 pages but and then the MRIs were provided on request when Liberty Mutual had questions and that was after nurse Kroger had reviewed the 4,600 pages which really didn't take her that long took her maybe a month or two I believe and she Liberty Mutual's own retained nurse nurse Kroger said that well the neck pain is a it's a new problem it certainly appears as though mr. Sahadi's issues were aggravated after the after the accident and mr. Sahadi's trial counsel made very clear that this was not an acute injury case this was a case where you know to use his metaphor where one domino fell in the end and the rest of his degeneration became worse as a result almost certainly in light of what the insurance company was doing looking into his spinal pre-existing condition those you would acknowledge that those MRIs of the spine are essentially the most important medical records in this particular case and if those were not shared with the insurance company until at least October it may have been November it may have been December it may have been within you know a month or two of the settlement doesn't that bear some weight on your bad faith claim your honor I would submit that a reasonable jury could could disagree a reasonable to jury could look at the fact that Liberty Mutual's first medical expert nurse Kroger recognized that it was a new problem based on the records and and that there was an aggravation of the spine of the spinal condition and his overall overall condition and the fact that Liberty Mutual immediately changed its position after it finally deposed mr. Sahadi and nearly two years after the accident and said well he's sympathetic he's believable we better pay policy limits and they agreed to pay the very next day within an hour and so I think I think you know we could sit here and deliberate about you know how important were those records maybe should they be should they have been provided earlier how reasonable was this delay how reasonable was it to retain those additional experts who who didn't actually examine mr. Sahadi but I would submit that whether there's a genuine dispute whether is there is a genuine dispute and that should be for the jury to deliberate on I have a yes no answer a question right yes in April 14th when the 4,600 pages were delivered was a signed medical release also delivered to Liberty I believe that was provided shortly thereafter I want to say a month later I can so I don't think so but I will get back to you yeah all right so my yes no is not sure got it all right thank you thank you very much I'll give you a couple minutes for rebuttal mr. booth please state your appearance good morning your honors may it please the court Nicholas bows for Liberty Mutual fire insurance company and I will begin by talking about branch as well and Brent is very clear about the approximate causation requirement and the conditions under which attorneys fees are emphasized many times that they're only recoverable as a damage analogizing to a case of personal injury where a medal of medical expenses would be recoverable as approximate cause of an event that that same way it said that attorneys fees can be recoverable but only where the bad faith causes the insured to incur the costs I I think you did a really nice job in the briefing and I understand the your contingency fee argument although it's tough the the fallout is tough given that in these cases contingency fees are ubiquitous but that is what it is could you could you focus on the question about cost sure the costs are not recoverable for for a few different reasons independent reasons first some of them were incurred again prior to the date that the plaintiff alleged that the bad faith began that is they were incurred prior to May 27 2016 so you have the same right but some were not and that's what I'm focusing on and then you have others that were incurred as part of the arbitration that was submitted his demand his claim to the company he demanded an arbitration at that very same time so costs that were incurred by him in connection with that arbitration that he demanded and that he insisted go forward many many times were not caused by any bad faith but by his own demand for arbitration well regardless of the forum used to resolve the dispute and mediation arbitration of his point is I think once you had all the information you know even if Brandt is read to exclude anything that I would have had to incur anyway that regardless of the forum used to resolve the dispute those other costs I shouldn't have had to incur what's wrong with that but because he needs to show why he should not have had to incur them and he didn't do that and that brings me to another way well his are his arguments going to be well because you didn't pay you had everything you needed you had I think although I have a question for you about whether you had a signed medical release and it was at some point it was just too long so why is that not right why why couldn't a jury agree with that with respect to costs in particular right from the the general issue of whether there was an unreasonable withholding of benefits if he's going to claim specific cost items he needs to explain why each specific cost item was incurred as a result of bad faith as opposed to being incurred as a result of a reasonable aspect of an investigation counsel just conceded that there were a reasonable follow-up request so he's got to show why if a cost was incurred as part of responding to a reasonable follow-up request why should that it be included as part of a recoverable grant cost and counsel did and and mr. plaintiffs didn't do that and he waived that issue down at the district court and waived it again here by not raising in the papers I couldn't let's let's focus on this policy argument if you don't mind mr. Bose because this is you know gives me some pause here I understand you know Brant's what Brant says but if we were to affirm the district courts Brant's analysis here and hold that Sahadi is not entitled to attorneys fees under Brant because he can't show the requisite causation like we've been talking about does that does that if we find that here does that preclude all future insurance from recovering attorneys fees no matter how egregious the insurers conduct is you know if insured proactively hires the the attorney to help them through the claims process well it depends your honor on the facts of each different case and so the main point is I guess I mean do you think that's the result the California Supreme Court intended in Brant I think there's a lot of language also you know including in CASM which came after Brant which is a contingency fee case that kind of underscores that Brant's premise was to recover as tort damages the legal fees incurred to recover their policy benefits so that the burden of attorneys fees does not diminish the insurance compensatory award so I'm just trying to reconcile what they what they seem to be protecting which I think we have to do is try to predict what the California Supreme Court would do here what they seem to be protecting versus you know some possible conflicting or inconsistent language regarding the fees well I think that the Brant court was was very specific about the requirement that it was only awarding those as as tort damages and so the situation to to your point I mean I think I understand your concern and I analogize it to another insurance principle in California which is where there is no coverage under a policy even if the insurer acted unreasonably in its investigation and did all these things there is no cause of action for bad faith so it's not that there's no remedy in that situation for what is the remedy that well what is the remedy well there's no harm there's no harm caused to the to the insured so the insured is not able to collect any but there are other options for reporting the insurer to the Department of Insurance or potential other cause of action well why shouldn't we find that Sahadi is entitled to Brant fees if he can show that he would have eventually had to retain an attorney to recover the benefits because that's not how he would not have incurred those attorney fees except for the insurance company's bad faith and that's just not the case he had he was not out of pocket at all so that let's just assume that Sahadi's counsel was retained on an hourly rate and that Liberty Mutual began acting a bad faith and in let's could Sahadi recover the fees incurred after Liberty Mutual began acting in bad faith or does that bad faith have to be the reason that Sahadi retained the counsel no I think in that situation where he potentially could be able to recover those fees that were incurred after the date the bad faith began I have two follow-up questions on this point but I don't want to interrupt if I just want to kind of poke at this a little bit I tried a lot of these cases and I don't think I ever had one where I didn't have a physician come in and say well as we age we get degenerative disc disease and so to follow up on Judge McGee is point about why couldn't he show that he would have had to retain counsel I mean there's a really detailed timeline as you do I am sure and and for the first many months plaintiffs counsel not present company included was not responsive okay but why couldn't a jury look at this and hear this evidence and and understanding that I think it would be likely there would be an expert who would say well as we age we get degenerative disc disease and these are the kinds of signs you know we see on films so taking that together with after your team had everything and there's an expert that starts to say well right the images didn't show any changes caused by the accident and in fact it seems to me that you know sort of the gestalt is that these films were really unremarkable and entirely consistent with all of it what's happening to my spine right now as I sit here in yours as you sit there and decide they were just stalling opposing can that's my one question and you know I couple that with it we've pushed pretty hard on a plaintiff's counsel to say where's the unreasonable delay and she's pointed out a pretty discreet period on the timeline here and says what they can't do under California law is nothing you know take a break I think was her position and she mentioned I think she said a 40-day limit or a guideline where assurance companies are supposed to read respond and which what they were getting in sort of June July August in the fall of 2016 was delay because she an expert wants to decide if these films are meaningful or not can you this is a very kind of I don't even know what my question is but I'm concerned about putting those two factors together why couldn't a jury just say they were they were stalling their feet and at some point that's bad fit because of the nature of the did I say stalling their feet I meant dragging their feet sorry go right ahead understood and the answer your honor is because because of the nature of the claims injury and the nature of the symptoms you have complex questions of what's causing these symptoms what's causing these injuries so part of looking at the history of the spine is to determine is this something that the symptoms that are being claimed is this something that is the result of something that pre-existed a condition that pre-existed the accident such that the symptoms really attributed to the to the pre-existing condition and not the accident right except that the nurse had been through for the 4,600 pages and at that point because you had him as of April and it seems like rather than saying it could be of course it could be pre-existing but after you've gone through the records and nobody's pointing to anything right then well actually it actually that when the nurse went through the records she identified many many pre-existing issues and including spinal degeneration and stenosis noted in 2015 2013 a reference to a neurosurgeon referral in 2005 which caused the insurance company to want that record yes except that what you're talking about that's the just to be clear I know I'm interrupting forgive me but her responses are what I what I'm referring to in my question which it seems entirely what I've heard in so many of these trials same old same old there's some degenerative distance yes there is with all of us as we age so did she did she point to something other than the aging process you mean an acute injury and right what is there it seems it's just entirely unremarkable to me was there some what could a jury decided there wasn't really a good faith reason to think that something really was pre-existing no I think your question is the point why they need to look at it to see because for example if there is no acute injury but then they go and get the MRIs that show there was acute injury like some some acute change sudden change on January 19 2015 then they say okay well maybe these claim symptoms really were the result of the accident so you don't know what so it's it's a it's just an effort to collect information in order to determine one way or the other you know because the MRIs could have could show that his claims symptoms are the result of the accident or the opposing counsel said you can't take a break and that there's a some kind of rule or ethical standard professional standard in California about 40 days I can you respond to that well I think that yes the the statement I think was in the context of the assertion that between sometime in July and sometime in October there was a delay but the record shows that at that time the parties were both represented by counsel engaged in discovery in the arbitration exchanging discovery and at the very same time mr. Crump who had taken over the file was reviewing the 4,600 pages of documents and at the result of his review of those documents then continued with the evaluation and the adjustment so there was no break it was just you know there was the arbitration going on at that time that had been demanded and and so but the rule though in California is the insurance company absolutely is is able to continue to investigate and just the days there's no hard and fast rule on that it's just whatever a reasonable investigation period takes and I think I submit that the record here shows that there was absolutely a reasonable investigation there certainly certainly was not any conduct that meets the standard of bad faith which is a conscious and deliberate act so can I just ask you oh I'm sorry so can you just explain to me the MRIs and when they came and and the significance of those MRIs to your ultimate decisions the MRIs were not part of the original submission in April 2016 they were I believe they were identified by the nurse during her review as something that should be requested by Liberty right after that they were received June 21 they received by June June 21 2016 then they were sent to a radiologist for review the radiologist provided a report in early July 2016 which showed no acute injury which caused Liberty to say you know we can't conclude that your claim is worth $485,000 like you say it is thank you I have another aspect on the on the whether the investigation was fair and reasonable with respect to whether you know there's a triable issue of fact so let me just ask you you know could a reasonable jury infer from the undisputed facts in this case that Liberty Mutual's investigation was unreasonable because Liberty Mutual ignored evidence that Sahadi's quality of life worsened as a result of the accident and focused only or certainly primarily on its perceived events that Sahadi's spinal injury that needed surgery was not caused by the accident because I know there's some case law that maybe not support the insurance company on this so I just want to give you an opportunity to respond yes thank you your honor I think the the record shows that there really aren't any material facts and dispute here and the record shows an objective view of the entire record which is how the bad faith is looked at shows that the investigation was entirely reasonable and the fact that mr. Sahadi claimed to be in pain certainly that goes to the question of whether his the value of his claim is $485,000 but again it goes that goes to the question of whether it was caused by the accident or something else so the insurance company needs to conduct an in order to determine these these things and it conducted a reasonable one here yeah but it seemed like the insurance company was really focused on the spinal injury and that needed cert on you know the trying to defend that whether or not you know Sahadi's spinal injury there it needed surgery and it seemed like he was also complaining of the pain and everything his quality of accident and it's a case modest call all seems to indicate that you know when a insurance company's investigation doesn't focus on everything and just on certain things that that may create a tribal issue of fact and I just wanted to give you an opportunity to respond to that thank you the evidence here shows that Liberty Mutual did consider everything and that's evidenced by the $485,000 policy limit despite consulting experts opining that what he was claiming was not caused by the accident and in the course of coming up with their valuation the evidence shows that they considered the letters that were provided by the insurance treating physicians and weighed all of the evidence they put all of the information together determined evaluation range and ultimately pay the limit even though it was on the very very high end of that range so it's not a situation where where some cases talk about an insurer that myopically focuses on obtaining evidence to disprove a claim that was not the situation here the situation here the record shows was that the insurer was simply trying to gather all of the facts so that it could determine evaluation range both good and bad was there some revelate this is a lot of money and then there was another for this type of damage type of accident and then there was another you know very large recovery so I just it just begs the question and you're way over time but was there some revelation at this deposition that doesn't come through on our record here other than that he was very believable and sympathetic it was the deposition and combined with everything else was the conclusion that you know they that led them to conclude that it could be worth the policy limit but they certainly their valuation range was between approximately three hundred and fifty thousand dollars and approximately four hundred and ninety thousand dollars appreciate thank you thank you very much listen judges do you have another question no no no thank you all right miss Patrick you were way over time I'll just give you two minutes to give your final rebuttal I'm sorry you're muted I said thank you I appreciate it on the bad faith issue I would push back against the reviewed the the filed because the record reflects from mr. Crump's deposition you know he said those forty six odd forty six hundred some odd pages I did not review those three er 386 to 387 but at a minimum creates a genuine issue as to whether those documents were reviewed whether that time was necessary to review those documents especially given that the nurse already summarized them in terms of your honor judge Maria asked about leading authorities for you know the bad faith and the genuine dispute I would agree that my skull is a very good case and I would also point to frame and fadif all cases where you know the the insurer retain experts but there was still a genuine dispute as to the reasonableness of their investigation and then I did want to follow up with some of the record sites that we discussed in the opening I agreed that the the MRIs were shared late June of 2016 and that is also when the post accident when the release was shared that was June 23rd 2016 do you have an ER side are yes on a 4 ER 7 to 1 thank you yeah so that was shortly shortly after the after the demand package and I believe it was within two weeks of Liberty Mutuals request and finally the place in the record where that itemizes the costs of the grant costs and expenses for ER 8 to 4 to 8 to 5 that's itemized and dated expenses if you have any other questions I'm happy to answer them which sessions no no thank you no thank you both I know we asked a lot of questions challenging case we appreciate your oral arguments here very much thank you the case of Fred Sahadi versus Liberty Mutual Insurance is submitted
judges: Murguia, Christen, Sessions